1  OSTERGAR LATTIN JULANDER LLP
   Treg A. Julander (State Bar No. 174759)
2  Allen C. Ostergar III (State Bar No. 166411)
3  9110 Irvine Center Drive
   Irvine, CA  92618
4  Telephone:  949-305-4590
   Facsimile:  949-305-4591
5
6  Attorney for Plaintiff
   NAZ II HOLDING, LLC
7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 NAZ II HOLDING, LLC, a Nevada           Case No.:  8:23-cv-00030
   limited liability company,
12                                         **COMPLAINT FOR:**
            Plaintiff,
13                                         1. **INTENTIONAL INTERFERENCE**
        vs.                                   **WITH CONTRACTUAL**
14                                            **RELATIONS;**
   THE LITIGATION PRACTICE GROUP          2. **INTENTIONAL INTERFERENCE**
15 PC; TONY DIAB; VALIDATION                  **WITH PROSPECTIVE**
   PARTNERS, LLC and DOES 1-10,              **ECONOMIC ADVANTAGE;**
16 inclusive,                              3. **UNFAIR COMPETITION IN**
                                              **VIOLATION OF CAL. BUS. &**
17          Defendants.                       **PROF. CODE §§ 17200, *ET SEQ.*;**
                                           4. **CONVERSION**
18                                         5. **MONEY HAD AND RECEIVED**
                                           6. **ACCOUNTS STATED**
19                                         7. **UNJUST ENRICHMENT**
20                                         **JURY TRIAL DEMANDED**
21

22

23        Plaintiff Naz II Holding, LLC ("Plaintiff"), demanding a jury trial for any

24 issue triable by a jury, alleges:

25                        **NATURE OF THE CASE**

26        1.     This action arises from an ongoing scheme in which Defendant The

27 Litigation Practice Group PC ("LPG"), under the direction of a disbarred and illegally

28 practicing lawyer, Defendant Tony Diab, (collectively with DOES 1-10, the "LPG

                                    -1-

Defendants"), is misappropriating millions of dollars of investments Plaintiff made in Defendants' debt resolution legal services business.

2.     Plaintiff is one of the investor-clients of Defendant Validation Partners, LLC ("VP"). VP's main purpose is to raise capital for LPG's debt resolution practice. To do so, VP acts as a factor: it purchases accounts receivable based on the legal fees owed to LPG by its clients, who are generally individual consumers with significant credit card or other consumer debt. In some instances, LPG directly assigns its accounts receivable to VP. In other instances, LPG pays a portion of the fees from each client account to "Marketing Affiliates" in exchange for the Marketing Affiliates' services in identifying consumer clients for LPG to represent. The Marketing Affiliates then assign to VP their rights to receive these payments from LPG. In both instances, LPG is contractually obligated to pay the fees it receives from its clients to VP.

3.     VP acquires the accounts receivable with funds solicited from investors like Plaintiff. Plaintiff invested in VP through two separate agreements in 2021 and 2022. Under these agreements, VP is obligated to repay Plaintiff's principal plus a return on investment out of payments it receives from LPG. As the LPG Defendants know, if LPG does not pay VP, VP cannot pay Plaintiff.

4.     In or about June 2022, LPG, at the direction of Diab, abruptly stopped paying VP. LPG was not unable to pay. Indeed, at least as recently as October 2022, its revenue from fees paid by its clients was stable and substantially exceeded its operating costs. Rather, LPG began rapidly diverting client-fee revenue and other assets to third parties in what appears to be an effort by Diab to transfer LPG's tens of thousands of revenue-generating client accounts to another entity that has no obligations to VP or VP's investors, thus enabling Diab to expropriate the lion's share of proceeds from LPG's lucrative debt resolution business.

/ / /

/ / /

**PARTIES**

5.      Plaintiff Naz II Holding, LLC is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada.  Plaintiff's sole member is the Naz II Family Trust, a trust organized under Nevada law.  The trustee of the Naz II Family Trust is Premier Trust, Inc., a Nevada corporation with headquarters in Las Vegas, Nevada.  Accordingly, Plaintiff is a citizen of Nevada.

6.      On information and belief, defendant Litigation Practice Group PC ("LPG") is a California professional corporation with its principal place of business in Tustin, California.  LPG is a law firm specializing in resolution of consumer debt. It claims it is an elite law firm dedicated to the practice of law.  In reality, LPG is run entirely by Tony Diab, a former attorney now disbarred in two states following disciplinary proceedings for serious ethics violations, including stealing client funds and forging the signature of a judge.  As alleged herein, the only known licensed attorney currently employed at LPG is nothing more than a figurehead who Diab impersonates to surreptitiously engage in the unauthorized practice of law.

7.      On information and belief, Defendant Tony Diab is an individual residing in Orange County, California.  Diab was disbarred from the practice of law in the state of California under Cal. Bar No. 277343 on January 10, 2020 for several ethics violations relating to Diab's fraudulent diversion a client's $375,000 settlement payment into his own personal banking account—a scheme that involved his forging the signatures of a judge in 2016.  Diab is also disbarred from the practice of law in Nevada as of January 14, 2019 for ethics violations related to the same incident under Nevada Bar No. 12954.

8.      On information and belief, Defendant Validation Partners, LLC ("VP") is a Florida limited liability company with its principal place of business in Florida. VP's members are Stratcap Management, LLC ("Stratcap"), a California/Wyoming limited liability company, and Goldtone Ventures, LLC ("Goldtone"), a Florida limited liability company.  Stratcap's members are Wes Thomas, a California

1    resident, and BAE Enterprises, Inc., a Wyoming corporation with principal place of

2    business in Wyoming.  Goldtone's members are Overtone Ventures Florida, Inc., a

3    Florida corporation with principal place of business in Florida, Longclaw, Inc., a

4    Florida corporation with principal place of business in Florida, and California

5    residents Rodney Squires and Michael Loughton, who are natural persons.

6    Accordingly, VP is a citizen of California, Florida, and Wyoming.

7          9.    Plaintiff sues Defendants DOES 1 through 10 under fictitious names.

8    Their true names and capacities, whether individual, corporate, associate, or otherwise

9    are unknown to Plaintiff.  When Plaintiff ascertains their true names and capacities,

10   it will amend the Complaint to insert the true name and capacity of each fictitiously-

11   named defendant.  On information and belief, each fictitiously named defendant is

12   legally responsible in some manner for the occurrences alleged in this Complaint, and

13   those defendants directly and proximately caused Plaintiff's damages.

14         10.   On information and belief, at all times relevant to this Complaint, the

15   LPG Defendants, and each of them, were the co-conspirators, agents, servants,

16   employees, alter egos, successors-in-interest, subsidiaries, affiliated companies or

17   corporations, and joint ventures of the other LPG Defendants, and were, as such,

18   acting within the course, scope, and authority of each other LPG Defendant.  Plaintiff

19   further alleges on information and belief that each of the LPG Defendants acted in

20   concert with, and with the consent of, each of the other LPG Defendants, and that

21   each of the LPG Defendants ratified or agreed to accept the benefits of the conduct of

22   each of the LPG Defendants.

23                      **JURISDICTION AND VENUE**

24         11.   The Court has jurisdiction over this matter based on diversity of

25   citizenship under 28 U.S.C. § 1332.  Plaintiff is a citizen of Nevada while

26   Defendants are citizens of California, Wyoming, and/or Florida.  The amount in

27   controversy, exclusive of interest and costs, exceeds the sum of $75,000.

28   / / /

-4-
COMPLAINT

12.     The Court has personal jurisdiction over Defendants, as they are citizens of California.   Moreover, Defendants conduct significant business in California. LPG, which Diab controls, is based in Orange County.  VP exists for the sole purpose of financing LPG's activities, including in California.  VP also filed a lawsuit against LPG, Diab, and others on September 20, 2022 in California Superior Court for the County of Orange based on similar misconduct by LPG and Diab as alleged herein

13.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred at LPG's office in Tustin, California, within the boundaries of the Central District of California.

## FACTUAL ALLEGATIONS

### *LPG's Investment Structure*

14.     On information and belief, VP commenced business in 2021 with the primary purpose of providing financing for LPG's debt resolution business.

15.     On information and belief, LPG has traditionally obtained clients with the assistance of various Marketing Affiliates.   These Marketing Affiliates locate qualified consumers who have been the victim of predatory lending or who otherwise are subject to claims of sizeable debt that are not legally valid under applicable law.

16.     On information and belief, LPG takes on these consumers as clients and compensates the Marketing Affiliates for their services by paying them a portion of the fees LPG earns in the debt resolution process.

17.     On information and belief, LPG has approximately 50,000 active client accounts nationwide, although, as discussed further below, Diab is actively causing these accounts to be transferred to third party entities.

18.     Upon information and belief, VP finances the relationship between the Marketing Affiliates and LPG by providing factoring services to the Marketing Affiliates.   Specifically, VP purchases at discounted rates the Marketing Affiliates' accounts receivable owed to them by LPG.   In this way, the Marketing Affiliates

assign to VP their rights to receive these payments from LPG.  On information and belief, LPG acknowledged the assignment of these accounts receivable to VP and, for a time, paid VP directly in accordance with the Marketing Affiliates' assignment of the accounts receivable to VP.

19.    VP obtains the funds with which to finance LPG and the Marketing Affiliates operation from investors such as Plaintiff.  VP then uses the payments from LPG—ultimately based on fees paid by LPG's clients—to repay the investors' principal plus a contractually agreed return.

### *Plaintiff's First Investment*

20.    On or around September 2021, VP's CEO, Russ Squires, and its one of its managers, Gary DePue, approached Plaintiff's agent, Chris Frankian, on behalf of VP to solicit Plaintiff's investment in Defendants' debt resolution business.  Squires and DePue explained that the return on Plaintiff's investment would be based on a portion of the fees generated by LPG's practice, the rights to which VP had acquired or would acquire through factoring the Marketing Affiliates accounts receivable. Squires and DePue told Frankian that the investments made by VP's investors in LPG's debt resolution practice were performing well, and Plaintiff's investment would result in a favorable return.   On October 4, 2021, in reliance on these representations, Plaintiff agreed to invest in VP pursuant to the terms of a written contract ("Agreement No. 1"), attached hereto as **Exhibit A**.

21.    Agreement No. 1 provides for Plaintiff to invest $2,000,000 with VP in exchange for VP's obligation to repay Plaintiff's principal of $2,000,000 plus a 20 percent return over a series of 12 monthly payments, for a total of $2,400,000. Accordingly, Plaintiff paid VP $2,000,000 by wire transfer on or about October 4, 2021.

22.    The LPG Defendants had actual knowledge and notice of Plaintiff's investment under Agreement No. 1.  At the time of execution of Agreement No. 1, Wes Thomas was both LPG's Chief Financial Officer, a close associate of Diab, and

a member of Stratcap, one of VP's owners.  Thomas was thus involved in, and knowledgeable about, the activities of both companies.  In addition, Frankian specifically told Thomas that Plaintiff would be investing in VP and LPG's business.

23.    The LPG Defendants also knew that VP's ability to repay Plaintiff depended on  LPG properly remitting the fees received from its clients to VP in accordance with the its obligations to Marketing Affiliates that had been assigned to VP.  Indeed, on information and belief, LPG expressly recognized each assignment and confirmed that VP was entitled to payment as a result.

24.    Plaintiff received a total of nine payments in accordance with the pay schedule outlined in Agreement No. 1, with the first payment in October 2021 and the last in June 2022.  These nine payments amounted to $2,034,000, leaving a shortfall of $366,000.

### *Plaintiff's Second Investment*

25.    On or around March 2022, representatives of VP again approached Frankian requesting that Plaintiff make a second investment into LPG's debt resolution practice.  At that time, VP had not yet defaulted on its payments to Plaintiff under Agreement No. 1.    However, Plaintiff was hesitant to make a second investment.  To "sweeten the deal," VP told Frankian the terms of Plaintiff's second investment would be more favorable.  On a phone call on or around February or March 2022, Squires informed Frankian that the terms of the second investment deal would defer payment by 90 days, but would pay a greater return of 25 percent.

26.    In reliance on these representations, Plaintiff executed Agreement No. 2, attached hereto as **Exhibit B** on or around March 9, 2022**.**  The overall structure of Agreement No. 2 was substantially similar to Agreement No. 1, except that, consistent with the above negotiations, VP's first payment was deferred 90 days and Plaintiff received a contractual rate of return of 25 percent.  Plaintiff invested $2,500,000 and was therefore owed a total of $3,125,000.

/ / /

27.    The LPG Defendants had actual knowledge of Plaintiff's investment under Agreement No. 2.  At the time of execution of Agreement No. 2, Thomas was both LPG's CFO, a close associate of Diab, and a member of Stratcap, one of VP's owners.  Thomas was thus involved in, and knowledgeable about, the activities of both companies.  In addition, Frankian specifically told Thomas that Plaintiff would be investing in VP and LPG's business.

28.    The LPG Defendants also knew that VP's ability to repay Plaintiff depended on  LPG properly remitting the fees received from its clients to VP in accordance with the its obligations to Marketing Affiliates that had been assigned to VP.  Indeed, on information and belief, LPG expressly recognized each assignment and confirmed that VP was entitled to payment as a result.

29.     Plaintiff received a single payment of $300,000 under Agreement No. 2 on June 22, 2022, but no further payments since, leaving a deficit of $2,825,000.

30.    In sum, as of the date of filing of this Complaint, Plaintiff is still owed $366,000 plus interest under Agreement No. 1 and $2,825,000 plus interest under Agreement No. 2, for a total outstanding balance of $3,191,000 plus interest.

### *LPG's Assurances and Nonpayment*

31.    On or around August 3, 2022, Thomas informed Frankian that LPG had stopped remitting the funds to VP needed to pay Plaintiff under the Agreements.

32.    On or around this time, Russ Squires also informed Frankian that Diab had gone "rogue," and despite LPG continuing to collect revenue from tens of thousands of client accounts, Diab was refusing to remit the funds to VP as required under VP's acquisition of the Marketing Affiliates' rights to receive a portion of the fees paid to LPG.  Squires specifically told Frankian that Diab had personal and executive control over the revenue received by LPG and Diab had unilaterally cut off any and all payments due to VP.  Squires told Frankian, and Thomas confirmed, that Diab "ran" LPG, including controlling LPG's trust and bank accounts, despite having been disbarred in California and Nevada for misappropriating client funds and

1   associated ethical violations.

2       33.   Throughout August 2022, Frankian and Thomas continued to
3   communicate regarding LPG's failure to pay VP and LPG's cause of VP's default
4   under the Agreements between VP and Plaintiff.  Thomas promised that LPG would
5   soon resume making payments directly to Plaintiff, even requesting Plaintiff's wire
6   transfer information to facilitate such payments.    But after more time passed and
7   Plaintiff had still not received any further payments under either Agreement, Thomas
8   told Frankian that "Tony [Diab] was supposed to send it [the money]," and "I can't
9   control Tony."

10      34.   Frankian also interacted directly with Diab on behalf of Plaintiff between
11  August and October 2022.  On or about August 22, 2022, Diab promised Frankian
12  that LPG would "probably send [Plaintiff] $50,000 every couple of days" and again
13  requested that Frankian send the wire transfer instructions to Thomas so Diab could
14  pay Plaintiff directly for the outstanding amounts under Agreement Nos. 1 and 2.
15  Plaintiff never received any payments as Diab promised.  In truth, Diab was
16  misleading Plaintiff.  Diab had no intention to pay Plaintiff, VP, or its investors.
17  Instead, Diab had decided to keep the revenue due to VP and Plaintiff for his own
18  personal benefit, to fund his other ventures, and make payments to his friends and
19  business associates.

20      35.   On information and belief, LPG, under Diab's direction, is intentionally
21  and maliciously withholding money due and owing to VP and Plaintiff.   On
22  information and belief, LPG continues to receive a substantial stream of revenue  in
23  the form of fees from tens of thousands of client accounts.  A substantial portion of
24  this revenue was assigned to VP and comprises the source of funds upon which VP
25  depends to pay its investors, including Plaintiff, as Defendants know.

26      36.   On information and belief, Diab is in the process of misappropriating and
27  diverting the funds LPG owes to VP and Plaintiff for his own personal use and to
28  shield them from LPG's creditors, including using the funds to directly purchase

additional client accounts.  On information and belief, one of Diab's objectives appears to be to transfer LPG's client accounts to a new law firm that has no obligations to VP or Plaintiff.

37.   As a consequence of LPG's refusal to pay VP and Diab's unlawful diversion of the funds it owes to VP and Plaintiff, VP cannot pay Plaintiff and is therefore in breach of its obligations to Plaintiff under the Agreements.

### ***Tony Diab's Role at LPG***

38.   Tony Diab was once a licensed attorney in the states of California and Nevada.  Diab was disbarred from the practice of law in Nevada on January 14, 2019 for ethics violations relating to stealing large sums of client funds.  Diab was disbarred from the practice of law in California on January 10, 2020 for several ethics violations, including for fraudulently diversion of a client's $375,000 settlement payment into his own personal banking account and forging the signatures of a judge in 2016.  Since then, Diab has not been licensed to practice law in Nevada, California, or in any state in the United States.

39.   On information and belief, Diab practiced law at his firm, Diab Law in Newport Beach, California prior to and leading up to his disbarment.  On information and belief, Diab's debt resolution practice commenced at Diab Law.   Upon information and belief, Diab founded the LPG law firm in California one month after his disbarment in Nevada.  Diab then transferred his debt resolution practice to LPG.

40.   On information and belief, at LPG's inception, the President and Secretary of LPG were listed as John Thompson and Rosa Bianca Loli, respectively. Plaintiff is informed and believes, and on that basis alleges, that neither Thompson nor Loli were ever attorneys licensed to practice law in California or any other U.S. state.

41.   At some point after LPG's inception, attorney Daniel S. March assumed the roles of President and Secretary of LPG.  March is licensed to practice law in California, but his  attorney profile on the California State Bar website shows

he was subject to disciplinary action and suspension in 2008 for willful violation of the Rules of Professional Conduct related to his handling of client funds.  Plaintiff alleges that March has, and has continued to, practice law through a law firm named Law Office of Daniel S. March in Tustin, California. As of January 4, 2023, March still lists this firm as his employer with the State Bar of California, although LPG's website lists March as its "Managing Shareholder."

42.    Although March appears to be the only licensed attorney employed at LPG, on information and belief, he does not exercise or retain control over the law firm, its client trust accounts, its finances, or any business decisions of LPG, including its means of practicing law and all other aspects of the firm's business operations.

43.    On information and belief, March is merely a figurehead used by LPG to conceal the fact that a disbarred attorney—Diab—exercises complete and exclusive control over the firm's finances, IOLTA client trust account, operations, and practice of law.  On information and belief, March has permitted Diab to use his name and bar license as Diab deems fit, including signing March's signature on contracts on behalf of LPG, communicating with third parties—including Plaintiff—on LPG's behalf, and making financial decisions regarding client funds.  To hide his unlawful practice of law, Diab communicates with third parties and acts on LPG's behalf under the label "Admin" and using the email address "admin@lpglaw.com."  For example, the primary DocuSign signatory used by LPG to execute contracts goes to "admin@lpglaw.com," an e-mail account used and controlled by Diab, through which Diab signs contracts as March.

44.    On information and belief, Diab runs a substantial portion of the business operations and the practice of law through various intermediaries in the firm.  The vast majority of LPG's debt resolution work occurs without litigation, i.e., very few of LPG's clients actually end up in court.  This pre-litigation debt resolution work is almost entirely done in California by a large team of unlicensed staff.  On information

and belief, neither Diab nor LPG's staff is supervised, managed, controlled, or directed by a licensed attorney, and is instead supervised, managed, controlled, and directed by Diab.  March has abdicated all responsibility for managing LPG and effectively exercises none of the traditional functions a managing partner exercises over a law firm.

45.   On information and belief, Diab treated himself as a 1099 attorney for a portion of the time after his disbarment, issuing direct payments to himself from July of 2019 through March of 2020 for "Client attorney fees" in a total amount of at least $445,000.

### *Tony Diab's Control and Diversion of LPG's Funds*

46.   On information and belief, since June 2022, the LPG Defendants intentionally have diverted revenue owned to Plaintiff and VP, with the knowledge and intention of forcing VP to default on its obligation to pay Plaintiff under the Agreements.

47.   On information and belief, Diab himself is in complete control over the finances of LPG, including LPG's bank accounts and IOLTA client trust account. These accounts receive and hold the client fee revenue assigned to VP by way of its factoring of the Marketing Affiliates' accounts receivable.

48.   Diab has repeatedly and continuously mispresented the status of LPG's finances to Plaintiff and VP to promote the falsehood that LPG lacks the funds to pay the amounts Plaintiff is owed under the Agreements.  In truth, LPG continues to receive substantial revenue from the client fees to which Plaintiff and VP have acquired the rights. Diab has intentionally and unlawfully diverted those funds to business associates and third-party entities he controls.  For example, on information and belief, between July and October 2022, Diab personally authorized LPG to pay more than $1,000,000 to marketing/lead generation firms, at least one of which Diab partially owns, which is inconsistent with LPG's business model of obtaining client accounts through its Marketing Affiliates in exchange for assignments of a share of

1  fees generated by such accounts.

2      49.    In addition, on information and belief, the LPG Defendants have spent
3  large sums on buying assets for LPG rather than paying monies owed to VP and its
4  investors.  Specifically, LPG spent over $6 million to directly purchase new client
5  accounts between July and October 2022.

6      50.    On information and belief, Diab also appears to be rapidly transferring
7  LPG's fee-generating client accounts—many of which had already been assigned to
8  VP—to a third-party entity called Teracel.  On information and belief, LPG did not
9  receive any money in exchange for these accounts.

10     51.    Diab is thus on course to drain LPG of its assets.  If Diab's looting
11 scheme is permitted to continue, LPG will become unable to repay VP and Plaintiff,
12 while Diab continues LPG's debt resolution practice through another entity that has
13 no obligations to VP or Plaintiff.

14                        **FIRST CAUSE OF ACTION**

15                   **Breach of Contract – Agreement No. 1**

16                              **(Against VP)**

17     52.    Plaintiff incorporates by reference as though fully set forth herein all
18 preceding paragraphs of this Complaint.

19     53.    Plaintiff and VP entered into Agreement No. 1 on or about October 4,
20 2021 (attached hereto as **Exhibit A**).  According to the written contract, Plaintiff
21 agreed to pay VP $2,000,000 and VP agreed to repay this sum plus 20 percent interest
22 for a total of $2,400,000 over twelve monthly payments.

23     54.    Plaintiff paid VP the $2,000,000 required under Agreement No. 1 by
24 wire transfer on or about October 4, 2021.

25     55.    VP made payments to Plaintiff through June 2022 for a total of
26 $2,034,000, but breached Agreement No. 1 by failing to pay the remaining $366,000.
27 As VP's CEO, Russ Squires, has represented, VP is unable to pay Plaintiff because
28 the funds for repayment of VP's investors consist of fees for client services that LPG

is obligated to pay to VP, which LPG refuses to do.     VP has thus repudiated and anticipatorily breached Agreement No. 1 by announcing its inability to perform under that agreement.

56.     As a consequence of VP's breach of Agreement No. 1, Plaintiff has been damaged in the amount of $366,000 plus interest.

## SECOND CAUSE OF ACTION

### Breach of Contract – Agreement No. 2

### (Against VP)

57.     Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

58.     Plaintiff and VP entered into Agreement No. 2 on or about March 9, 2022 (attached hereto as **Exhibit B**).  According to the written contract, Plaintiff agreed to pay VP $2,500,000 and VP agreed to repay this sum plus 25 percent interest for a total of $3,125,000 over twelve monthly payments following a three-month deferral of VP's repayment obligation.

59.     Plaintiff paid VP the $2,500,000 required under Agreement No. 2 by wire transfer on or about March 11, 2022.

60.     VP made a single payment of $300,000 to Plaintiff in June 2022, but has failed to pay Plaintiff the remaining $2,825,000 it owes under Agreement No. 2.  As Squires has represented, VP is unable to pay Plaintiff because the funds for repayment of VP's investors consist of fees for client services that LPG is obligated to pay to VP, which LPG refuses to do.  VP has thus repudiated and anticipatorily breached Agreement No. 2 by announcing its inability to perform under that agreement.

61.     As a consequence of VP's breach of Agreement No. 2, Plaintiff has been damaged in the amount of $2,825,000 plus interest.

**THIRD CAUSE OF ACTION**

**Intentional Interference with Contractual Relations**

**(Against LPG Defendants)**

62.     Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

63.     As alleged herein, Plaintiff has and had valid existing contracts with VP—namely, Agreement No. 1 and Agreement No. 2—and substantially performed its obligations thereunder.

64.     LPG Defendants, as part of their business relationship with VP and investors like Plaintiff, knew about the contracts between VP and Plaintiff.

65.     LPG Defendants, with the intent of disrupting and/or destroying the contracts between Plaintiff and VP, engaged in the conduct described herein, including but not limited to: (a) ceasing payments to VP despite having the funds to make timely payments; (b) misrepresenting LPG's inability to make payments to VP in order for VP to perform on the contracts with Plaintiff; (c) diverting the revenue owed to VP and Plaintiff away from LPG and into Diab's personal and/or unauthorized endeavors; and (d) transferring funds and fee-generating accounts out of LPG to shield them from LPG's creditors.

66.     LPG Defendants' conduct was willful and in bad faith and intended to disrupt the performance of VP's obligations under the Agreements to prevent Plaintiff from recovering the monies it is owed so that LPG and Diab could keep the revenue for their own personal benefit.

67.     As a result of this conduct, Plaintiff has been and will continue to be damaged.  The full amount of Plaintiff's damages is presently unknown but is at least $3,191,000.  Plaintiff is entitled to recover such sums, together with interest thereon at the maximum legal rate according to proof.

/ / /

/ / /

68.     LPG Defendants, in engaging in the above-described conduct, are guilty of oppression, fraud and/or malice, and were acting with willful and conscious disregard of the rights of Plaintiff.  Plaintiff is therefore entitled to punitive damages against LPG Defendants in an amount appropriate to properly punish those defendants for their conduct and to deter similar future conduct.

## FOURTH CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage)

### (Against LPG Defendants)

69.     Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

70.     Plaintiff has current and prospective economic interests with its current business partner VP through the Agreements executed between Plaintiff and VP between October 2021 and March 2022.

71.     LPG Defendants knew of this existing and prospective economic relationship and of the future economic benefit and advantage to Plaintiff from this relationship.

72.     LPG Defendants conspired to and intentionally engaged in unlawful conduct designed to interfere with and disrupt Plaintiff's business relationships and prospective economic advantage with its business partner VP, as alleged in this Complaint.  Such conduct includes, among other things: (a) diverting funds generated by Plaintiff's accounts receivable away from VP to prevent VP from performing on the contracts between Plaintiff and VP; (b) deceiving Plaintiff and VP about LPG's financial status and the revenue generated by the accounts receivable owned by Plaintiff and VP; (c) intentionally diverting revenue LPG owes to VP and Plaintiff; and (d) transferring funds and fee-generating accounts out of LPG to shield them from LPG's creditors.

73.     As a direct and proximate result of LPG Defendants' unlawful conduct, LPG Defendants interfered with and disrupted Plaintiff's relationship with its existing

business partner, VP, and Plaintiff lost the full economic benefit and advantage reasonably expected from the relationship.

74.     As a further direct and proximate result of LPG Defendants' conduct, Plaintiff has been and will continue to be damaged.  The full amount of Plaintiff's damages is presently unknown but is at least $3,191,000.  Plaintiff is entitled to recover such sums, together with interest thereon at the maximum legal rate according to proof.

75.     LPG Defendants' acts and omissions were intentional, malicious and oppressive, and they were done with the intent and design to damage Plaintiff. Plaintiff is entitled, therefore, to recover punitive damages, in an amount to be determined at the time of trial.

## **FIFTH CAUSE OF ACTION**

### **(Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

### **(Against LPG Defendants)**

76.     Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

77.     As alleged in this Complaint, LPG Defendants have engaged in a variety of conduct directed toward Plaintiff that constitutes unlawful, unfair, and fraudulent business practices in violation of California Business and Professions Code section 17200, including without limitation: (a) fraudulent transfer of funds owed to Plaintiff and VP in an effort to prevent Plaintiff and VP from collecting the money owed to them and to establish a new debt resolution practice based on LPG's assets, including the right to collect fees in connection with client accounts that have been assigned in whole or in part to Marketing Affiliates and/or VP, but lacking LPG's liabilities; (b) engaging in the unauthorized practice of law; (c) unlawfully using Plaintiff's assets for LPG Defendants' benefit; and (d) interfering in Plaintiff's contractual relations and prospective economic advantage.

78.    LPG Defendants took the actions alleged in this Complaint with the intent to injure Plaintiff, to gain an unfair competitive advantage, and to diminish competition.

79.    LPG Defendants have profited and will, in the future, profit unjustly from their unfair business practices.    Accordingly, pursuant to Business and Professions Code section 17203, Plaintiff seeks an award of restitution and disgorgement.

80.    As a proximate result of LPG Defendants' conduct, Plaintiff has been and will continue to be damaged.  Unless enjoined by this Court, LPG Defendants' unlawful competition has and will continue to cause great and irreparable injury to Plaintiff.  Plaintiff has no other adequate remedy at law for such acts and threatened acts.  Plaintiff therefore requests, pursuant to Business and Professions Code section 17203, that during the pendency of this action, this Court issue a preliminary injunction, and that after trial, this Court issue a permanent injunction, restraining and enjoining LPG Defendants and their agents, employees, attorneys and representatives, and anyone acting at their direction, from engaging in the unlawful, unfair, and fraudulent business practice alleged herein.

## SIXTH CAUSE OF ACTION

### (Conversion)

### (Against LPG Defendants)

81.    Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

82.    LPG Defendants wrongfully converted Plaintiff's monies to their own use without right or authorization.  Plaintiff had a right to possession over these monies.

83.    Plaintiff was damaged in amounts to be proven at trial.

84.     LPG Defendants have acted with malice, fraud and oppression, and an award of punitive damages in a sum according to proof at trial is justified, warranted and appropriate.

## SEVENTH CAUSE OF ACTION

### (Money Had and Received)

### (Against LPG Defendants)

85.     Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

86.     Defendants received money that was intended to be used for the benefit of Plaintiff.

87.     That money was not in fact used for the benefit of Plaintiff.

88.     Defendants have not given the money to Plaintiff.

89.     LPG owes Plaintiff money in amounts to be proven at trial, plus pre-judgment and post-judgment interest.

## EIGHTH CAUSE OF ACTION

### (Accounts Stated)

### (Against LPG Defendants)

90.     Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

91.     LPG Defendants owed Plaintiff money from previous financial transactions.

92.     Plaintiff and LPG Defendants, by words and/or conduct, agreed that the amounts that Plaintiff claimed to be due from LPG was the correct amount owed.

93.     LPG Defendants, by words and/or conduct, promised to pay the stated amounts to Plaintiff.

94.     LPG Defendants have not paid Plaintiff all of the amounts owed under these accounts.

95.     LPG  Defendants owe Plaintiff money in amounts to be proven at trial, plus pre-judgment and post-judgment interest.

## NINTH CAUSE OF ACTION

### (Unjust Enrichment)

### (Against LPG Defendants)

96.     Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

97.     LPG Defendants were wrongfully and unjustly enriched by the receipt of Plaintiff's money, which they continue to retain to the detriment of Plaintiff.

98.     Plaintiff is entitled to restitution and/or the imposition of a constructive trust to the monies wrongfully withheld by LPG Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

Plaintiff Naz II Holdings, LLC prays for judgment against Defendants as follows:

1.     For judgment in favor of Plaintiff on all causes of action;

2.     For the temporary and permanent injunctive relief requested in this Complaint;

3.     For general damages, plus interest, according to proof at trial;

4.     For lost profits according to proof at trial;

5.     For restitution and disgorgement of all profits in an amount sufficient to force Defendants to disgorge all ill-gotten gains;

6.     For treble damages;

7.     For punitive damages according to proof at trial;

8.     For reasonable attorneys' fees and costs incurred herein to the extent permitted by statute or contract;

/ / /

9.    For prejudgment interest; and

10.    For such other relief as the Court deems just and proper.

Dated:  January 6, 2023                    OSTERGAR LATTIN JULANDER LLP


By: _____
Treg A. Julander
Attorney for Plaintiff NAZ II
HOLDING, LLC